Good morning, your honors. I'm Shanti Bryan, appointed counsel for David Johnson. This is a Batson case, and the primary question here is whether the reasons the prosecutor gave for the strike of the one African-American juror who we'll call Mr. J were pretextual or not. But this is an Ed Pitt case, so that's not really our question, is it? Isn't it whether or not the last court issued a decision on this, issued a decision that was contrary to law, and was it objectively unreasonable? Yes, that's the review in this case. So we're not the first reviewing court on whether or not the Batson challenges were appropriate. We're the next level, right? Correct, your honor. Of course, there is a lot of deference given because we're here on a habeas appeal. I would like to point out that in Miller L2, the Supreme Court said deference does not by definition preclude relief. And Justice Scalia has said deference doesn't mean abdication. Tell us what is in the record that would suggest that the reasons cited by the prosecutor were pretextual. Her first reason was that Mr. J had at least four misspelled words in his juror questionnaire. Further questioning of her revealed that there were two misspelled words and possibly a third misspelled company name. It's unclear because we don't have the juror questionnaires from the other jurors whether there were misspelled words. It's highly likely that there were. The question, though, is what relevance did his misspelling of two words have to this pretty simple criminal case? Even though she emphasized that this was her main reason for striking the juror, it's just unclear why that made any difference at all. She did say that it was because he misspelled psychology, which was his supposed course of study. But this contradicts her second reason for striking him, which was that he was overqualified to address the or to understand the expert witness, potential expert witness. Didn't Mr. J, it was a man, wasn't it? Yes, it was. Didn't Mr. J express some misgivings, maybe too strong a word, but a bad experience with a military court-martial? Yes, that was her third reason for striking Mr. J was his military service and some unclear, it was really unclear from the record what his experience was in the court-martial. He served on the jury in the court-martial proceedings. And the record, in my opinion, reveals that he expressed really no opinions whatsoever. He had to be there, is what he told the prosecutor. The respondent strongly disagrees with that characterization of the record. I think that if you look at the record, you'll see that any opinion he had about the court-martial proceeding came after the prosecutor was very much probing him on the issue. And compared to other jurors that were impaneled that had jury service that didn't come to a determination or had other jury service that was unclear whether they liked it or not, the prosecutor did not probe those jurors, she did in this case. The record really reveals that his testimony was unclear. You really can't understand what he was saying about the court-martial proceedings. If the prosecutor had cited that as a reason, would that have been pretextual? I think that if the prosecutor had said that and that alone, that would have been a valid reason that was supported by the record. But that's not what she said. She cited the misspellings. She cited the degree or the courses in psychology. Because Mr. J, I guess, had said something that he had taken courses in psychology. And I think one of the reasons, if I recall correctly, the prosecutor said was that because of that, she thought there might be, it might be, there was concerns that he might be unduly influenced by potential psychological testimony. That apparently was going to be presented. Is that correct? Not exactly. Her stated reason was there was the potential for an expert on eyewitness identification. The court had already denied a continuance to the defendant, enabled him to present that eyewitness identification evidence. I mean, I'm sorry, the expert testimony. And so at this point in the trial, it looked very unlikely that that expert was going to testify. She said that was her reason, but she also said. Well, it's possible during the course of a trial, someone could open the door to that kind of testimony based on the questioning. So it was not definitively over at that point. Yes, I agree that there was the potential that that expert, the defense might find some other expert at the last minute and call them. But Mr. J never finished a degree in psychology. The prosecutor actually said a lot of times these identification experts testify about statistical studies. That was part of her reasoning. And there's absolutely no indication that he had any familiarity with statistical studies. There were jurors that were in panel that had completed degrees in sciences. They weren't really probed about what those were about. There were advanced degrees, jurors with advanced degrees that were not asked what fields those were in. So if her true concern was some over education in psychology, that's really undermined by the other jurors that were in panel. Your time. I want to get to all four. So the first one is the misspellings. Is that correct? I think I thought she said it was leading to concerns about competence. I don't know if I'm phrasing that exactly how she said it. The next one was concerns that he might be based on his courses in psychology, that he had studied psychology might be influenced for this potential psychological testimony. But then he indicated that he had a history of helping the homeless and underprivileged, which I guess led to the prosecutor's concern that he was someone who might sympathize with the defendant. And then the fourth one is that Mr. J seemed to indicate that more excuses are available, and I guess he did it in a proving way, are available to a defendant in a civilian court than in a court martial, which apparently led to concerns that Mr. J's decisions might be based on something other than the evidence. So I guess if we can respond to the last one especially. About? Well, either of those two. I want to make sure you respond to all of them, and we spent time on the first two. Okay. Her fourth, well, she did cite that he might let emotion rule him in this case. He did repeatedly say that he would be fair and impartial. There were other jurors that said they were hesitant about whether they could be fair or not. They were in Panel Juror 7 and Juror 11. She did say that she thought Mr. J was liberal-minded, and this, although it might have been maybe the most facially valid of the reasons, she did not stress this. She stressed the misspelled words. She stressed the court martial proceedings. And all that the Supreme Court requires is that they're motivated in substantial part by discriminatory intent. I'd like to go back and focus on the military service just for a quick second and that just to point out that she is responsible for articulating her own reasons. The Supreme Court has stressed that courts must be careful not to substitute their own judgment about the reasons that could have been given and that, in fact, Miller L says, if the stated reason does not hold up, its pretextual significance does not fade because a trial judge or an appeals court can imagine a reason that might not have been shown up as false. So compared with the other jurors in the context of the whole case, her reasons seem to be pretextual. All right. Thank you. Thank you. Good morning. May it please the court. My name is Laura Simpton. I'm appearing on behalf of Respondent Thawarden. Petitioner is correct that the AEDPA does apply to this particular issue before the court. And the U.S. Supreme Court indicated in Falconer how deferential that review is when you're reviewing a Batson claim. On direct appeal when reviewing a Batson claim, the trial court's determination is entitled to great deference which must be sustained unless clearly erroneous. This is on the first level of appeal. When you get into the federal court, the AEDPA demands additional deference and that the state court must be given the benefit of the doubt. Under D2 of 2254, that requires that the trial courts and the state court adjudication cannot be overturned unless the finding was unreasonable or contrary to controlling Supreme Court precedent. And E2 of that same statute provides that any factual finding by the state court is presumed to be correct and can only be rebutted by clear and convincing evidence. The trial court below considered the Batson claim. The appellate court upheld the trial court's ruling which was that the petitioner had failed to demonstrate purposeful discrimination. As petitioner's counsel noted, the prosecutor articulated four reasons for excusing Juror J. And she articulated all four of them and relied on all four of them. The first was the misspellings of words. She noted that one of those words that was misspelled was his area of education that he had pursued while in college. She wasn't sure if he had indicated it was physics or psychology, and that was what prompted her to question him about that. Does the two layer of deference, if you will, permit us to look at this record and say there was a reason which if the prosecutor had articulated, it would have been perfectly non-protextual? And I'm referring to what I asked your opposing counsel about this potential juror, Mr. J.'s kind of erratic behavior or responses. Well, and the prosecutor did state when she was explaining why she excused him, she said it was difficult to understand. She had a difficult time understanding him. That was partly what prompted her to keep asking him so many questions. And she even said that towards the end, his answers kept getting more confusing, and so she ended up giving up. But the important part is that when she did ask him about the court-martial process, it was the juror who said, you can't be saying situation stuff like you can hear out of the service. You just can't go for that because it doesn't exist and you can't say it does. And the prosecutor responded, okay, are you talking like excuses? And he said, yeah, exactly. And then she followed up saying things that may happen or excuse conduct outside a military court doesn't seem to apply. And he responded, yes. And then the prosecutor said, how do you feel about that given the scenario? And he said, this is much better. The situation is you have more freedom because like I was indicating there, there you're there, you get locked up, you're locked up, and that's a lockup you don't want. I think that the record amply supports the prosecutor's concern that this description of his military service serving on a court-martial, it wasn't a positive one. He seemed to be saying that the system was inherently unfair to the defendant because he wasn't able to offer as many justifications to excuse his conduct. That statement is also what prompted the prosecutor to articulate the additional reason for excusing him, which was that he seemed a liberal type person who would be prone to being sympathetic to the defendant and may base his verdict on emotion. That liberal type category was also based upon his volunteer work where Mr. J indicated that he would work on weekends and sometimes his vacation, helping out and volunteering to directly assist the homeless and young people in his neighborhood. Petitioner counsel has also suggested that the prosecutor's concern about Mr. J's psychology background was pretextual, and the record refutes that, in fact. The prosecutor, before even questioning Mr. J at pages 240 to 241 of the voir dire transcript, the DA had actually asked the trial court for permission to voir dire the entire jury on the ID expert because she had a printed set of questions that she would normally ask any time an ID expert was to be brought and that she was concerned about them being able to not be overly impressed or unduly swayed by this expert who may testify. The trial court even mentioned that, yes, the defense still had the possibility of obtaining an ID expert and that this could even be done as late as during the prosecution's case in chief. So the prosecutor believed that there was still the possibility an ID expert would be called and asked to voir dire the jury on it. The trial court specifically acknowledged it was a possibility. And more importantly, perhaps, during the Batson motion itself, when the prosecutor articulated this as one of her reasons for wanting to exclude the juror, the defense attorney did not say, oh, there's no chance that I'm ever going to call an ID expert or I've already told you I'm not going to call an ID expert. The defense attorney remained silent and the trial court yet again confirmed that there was this possibility an ID expert could be called. Your opposing counsel says that other jurors were allowed on who had other advanced degrees and was this, therefore, inherently unfair? I guess my question is one, if you can answer that question, and can we do a comparative juror analysis at this stage? Well, under U.S. Supreme Court authority, we can do at appellate level a comparative analysis, and a comparative analysis was conducted at the state appellate court level as well, and the federal district court below also engaged in an interjuror comparison. Most significantly, there were only two other jurors who had studied psychology. Those two jurors were removed by the prosecutor's preemptory challenge. The other jurors that Petitioner's Counsel is referring to are Juror 4, who was a geologist, Juror 5, who was a soil scientist, and Juror 10, who was a microbiologist. Those sciences are, I would refer to maybe as a harder science versus the psychology, which is more of a softer science. The prosecutor noted in her concern for somebody with a psychology background, not only did she mention about there being the studies, but she said she was concerned that if they have a psychology background and the psychologist comes and testifies, they may be unduly swayed, and that was part of her motivation. Also, what's more important, with Jurors 4, 5, and 10, none of these three jurors had expressed any negative views about the judicial system in the military or in civilian. None of them had studied psychology, and none of them indicated that they were a liberal-type person that were volunteering with the homeless and the youth and their community. So it's not a helpful comparison. And just one final comment about the military court-martial, the negative comments. The trial court took great care. When the prosecutor articulated that as an explanation, the trial court said, frankly, I had a difficult time understanding him and wanted to know what was the prosecutor's sense of what it was that he was getting at, and she indicated that he appeared to be concerned that there wasn't as much excuses allowed for the defendant in a court-martial proceeding. The trial court believed that was consistent with what he was thinking as well, but what's key is the trial court then ordered up a transcript of the juror's testimony. He then that evening reviewed that transcript and the following morning ruled on the motion, and in ruling on the motion agreed that the testimony did indicate that it was a negative view of the military court system. That is a factual finding that should also be given deference and could not be reweighed at this point in time. I see that my time is about to expire. If there are any more questions, I'm prepared to submit on the briefs. Thank you. Thank you. I'll give you a minute. I know you had less than that, but we'll go ahead and put it up to a minute. Just quickly, Mr. J's psychology background was a couple of years of college. The other scientists that were impaneled, and there were others that had advanced degrees, were never questioned more in depth about those degrees. They may not have been exactly similarly situated in their other situations with the court marshals, obviously, but there were other jurors that did have negative experiences with jury service or may have been more emotionally related to the defendant. Those just weren't probed as much by the prosecutor. The idea that the prosecutor struck two people with psychology degrees, this was after the Batson challenge had occurred, and as they say in Miller-Ell, this reeks of afterthought. Finally, I just want to leave with the general impression that Batson and Miller were unreasonably applied, and Miller-Ell instructs us very clearly that we should look to what the prosecutor stated her reasons for the strike were and not our impression of what could have been a reasonable reason to strike him. All right. Thank you very much. Thank you both for your oral arguments today. The case is submitted.
judges: Fletcher, Hawkins, Murguia